# PROMISSORY NOTE

$371,000.00                                                            Bowling Green, Kentucky

_____, 2010


FOR VALUE RECEIVED, the undersigned, **Eagle Industries, LLC, debtor-in-possession (*In re: Eagle Industries, LLC, United States Bankruptcy Court, Western District of Kentucky, Case No. 10-_____),** and **Eagle Transportation, LLC, debtor-in-possession (*In re: Eagle Transportation, LLC, United States Bankruptcy Court, Western District of Kentucky, Case No. 10-_____**), (the "Borrower"), jointly and severally promises unconditionally to pay to the order of Citizens First Bank, its successors or assigns (the "Creditor") during Creditor's regular business hours at Creditor's offices at 1065 Ashley Street; Suite 150, P>O. Box 51650, Bowling Green, KY 42102, or at such other place as Creditor may from time to time designate, the principal amount of Three Hundred Seventy-One Thousand and 00/100 Dollars ($371,000.00) (the "Principal Amount"), together with interest on the unpaid Principal Amount outstanding from time to time at the rate or rates hereafter specified and any and all other sums which may be owing to Creditor by Borrower pursuant to this Note. The following terms shall apply to this Note:

1.        **Interest Rate.**  As long as there is no existing uncured "Event of Default," as hereafter defined, interest shall accrue and be payable on the outstanding Principal Amount at a fixed rate of interest equal to six percent (6.00%) per annum. Interest shall be calculated on the basis of a year of 360 days applied to the actual days on which there exists an unpaid balance under this Note in accordance with Creditor's customary practice.

2.

3.        **Principal and Interest Repayments.**  Borrower shall repay the entire outstanding Principal Amount as well as all accrued interest according to the following repayment schedule:

> (a) An interest payment of $2,226.00 due and payable on November 30, 2010;
> (b) An interest payment of $1,917.00 due and payable on December 31, 2010;
> (c) A principal payment of $60,000.00 due and payable on December 31, 2010;
> (d) An interest payment of $1,275.00 due and payable on January 31, 2011;
> (e) A principal payment of $70,000.00 due and payable on January 31, 2011;
> (f) An interest payment of $1,190.00 due and payable on February 28, 2011;
> (g) An interest payment of $1,275.00 due and payable on March 31, 2011; and
> (h) A principal payment of $241,000.00 due and payable on March 31, 2011;

provided, however, that unless sooner paid, the entire amount of the unpaid Principal Amount as well as all accrued and unpaid interest and all other sums due under this Note that remain unpaid shall be repaid by March 31, 2011 which is the final and absolute due date of this Note (the "Maturity Date").

4.        **Repayment Extension.**  If any payment of principal or interest shall be due on a Saturday, Sunday or any other day on which banking institutions in the Commonwealth of Kentucky are required or permitted to be closed, such payment shall be made on the next succeeding business day and such extension of time shall be included in computing interest under this Note.

5.        **Late Charge.**  Borrower shall pay a late charge (the "Late Charge") of 5% of the amount then due if any payment in whole or in part due under this Note is not received by Creditor within 15 days after its due date. The late payment charge shall be payable to Creditor on demand, or if demand is not made, then on the due date of the next payment under this Note. A similar late charge may be imposed for each successive 30-day period during which all or any portion of such payment remains delinquent. Such late charge shall be in addition to, and not in lieu of, any other right or remedy Creditor may have, including the right to receive principal and interest and to reimbursement of costs and expenses.

6.        **Manner and Application of Payments.**  All payments due hereunder shall be paid in lawful money of the United States of America which shall be legal tender in payment of all debts and dues, public and

private, in immediately available funds, without offset, deduction or recoupment. Any payment by check or draft shall be subject to the condition that any receipt issued therefor shall be ineffective unless the amount due is actually received by Creditor. Each payment shall be applied first to the payment of any and all costs, fees and expenses incurred by or payable to Creditor in connection with the collection or enforcement of this Note, second to the payment of all unpaid late charges (if any), third, to the payment of all accrued and unpaid interest hereunder and fourth, to the payment of the unpaid Principal Amount, or in any other manner which Creditor may, in its sole discretion, elect from time to time.

7. **Prepayment.** This Note may be prepaid in whole or in part at any time without premium or penalty, provided that each payment shall be accompanied by payment of all unpaid costs, fees, expenses and late charges, if any, which are due plus all accrued and unpaid interest due as of the date of such prepayment. Prepayments shall be applied to principal payments in their reverse order of maturity.

8. **Obligations.** The term "Obligations" shall mean the full and punctual observance and performance of all present and future duties, covenants and responsibilities due to Creditor by Borrower of any nature whatsoever, including all past, present and future indebtedness and liabilities of Borrower to Creditor for the payment of money (extending to the Principal Amount and all interest, fees, late charges, expense payments, liquidation costs, and attorneys' fees and expenses), whether similar or dissimilar, related or unrelated, matured or unmatured, direct or indirect, contingent or noncontingent, primary or secondary, alone or jointly with others, now due or to become due, now existing or hereafter created, and whether or not now contemplated. If more than one Obligation is outstanding, each payment may be applied to such of the Obligations as Creditor shall determine in its sole discretion.

9. **Loan Documents.** The obligations of Borrower evidenced by this Note are secured by, guaranteed by, and are a part of the obligations referred to in, the Agreed Order Authorizing Debtor to Obtain Senior Secured Super-Priority Post-Petition Financing Pursuant To 11 U.S.C. §§ 105, 361, 364 and 507 entered in *In re: Eagle Industries, LLC, United States Bankruptcy Court, Western District of Kentucky, Case No. 10-_____ and In re: Eagle Transportation, LLC, United States Bankruptcy Court, Western District of Kentucky, Case No. 10-_____*, any promissory note, loan commitment, letter agreement, line of credit agreement, commercial financing agreement, security agreement, guaranty of payment, mortgage, deed of trust, pledge agreement, loan agreement, loan and security agreement, hypothecation agreement, indemnity agreement, letter of credit application and agreement, assignment or any other document or agreement previously, simultaneously or hereafter executed and delivered by Borrower and/or by any other Obligor, as hereinafter defined, singly or jointly with another person or persons to Creditor, in connection with this Note, whether or not this Note is specifically referred to therein, (as the same may from time to time be amended, collectively, the "Loan Documents").

10. **Obligor.** The term "Obligor" shall mean, individually and collectively, Borrower, each endorser, guarantor and surety of this Note, any person who is primarily or secondarily liable for the repayment of this Note or any portion thereof and any person who has granted security for the repayment of this Note, together with such person's heirs, personal representatives, successors and assigns.

11. **Events of Default.** The occurrence of any one or more of the following events shall constitute an "Event of Default" under this Note:

(a)     The failure of Borrower or any other Obligor to pay any sum due under this Note when due, whether by demand or otherwise;

(b)     the failure of any Obligor to perform, observe or comply with any of the Loan Documents or any Order of the United States Bankruptcy Court;

(c)     the occurrence of an event of default under the Agreed Order Authorizing Debtor To Obtain Senior Secured Super-Priority Post-Petition Financing;

(d)     the failure to make any of the interest or principal payments set forth in the Agreed Order Authorizing Debtor To Obtain Senior Secured Super-Priority Post-Petition Financing;

(e)　　the failure to pay when due the adequate protection payments to Citizens First Bank pursuant to the Agreed Interim Order Authorizing Debtor to Utilize Cash Collateral of Prepetition Lender and Granting Adequate Protection to Prepetition Lender, and any additional interim and/or final orders providing for adequate protection payments to Citizens First.;

(f)　　for failure to pay when due the following adequate protection payments to PBI Bank, Inc., in accordance with the payment schedule set forth in the Agreed Order of Adequate Protection entered into by the Debtor and PBI Bank, and any additional interim or final orders providing for adequate protection payments to PBI Bank;

(g)　　the effective date of any plan of reorganization or liquidation;

(h)　　entry of an order reversing in any respect the any order approving use of cash collateral, or payment of adequate protection to Citizens First or PBI Bank, Inc., Inc. (unless waived in writing by Citizens First and/or PBI Bank, Inc.);

(i)　　the conversion of the Chapter 11 Case to a case under Chapter 7 of the Bankruptcy Code;

(j)　　the appointment of a trustee or an examiner with special powers; or,

(k)　　The dismissal of the Chapter 11 Case; andThe death of any Obligor.

12.　　**Rights and Remedies upon Default.**　Upon the occurrence of an Event of Default hereunder, Creditor, in Creditor's sole discretion and without notice to Borrower or any other Obligor, may: (a) declare the entire outstanding Principal Amount, together with all accrued interest and all other sums due under this Note, to be immediately due and payable, and the same shall thereupon become immediately due and payable without presentment, demand or notice, which are hereby expressly waived; (b) have immediate relief from the automatic stay of 11 U.S.C. § 362, without notice or a hearing, upon the filing of an Affidavit of Default with the United States Bankruptcy Court (c) exercise its right of setoff against any money, funds, credits or other property of any nature whatsoever of Borrower now or at any time hereafter in the possession of, in transit to or from, under the control or custody of or on deposit with, Creditor or any affiliate of Creditor in any capacity whatsoever, including, without limitation, any balance of any deposit account and any credits with Creditor or any affiliate of Creditor (the "Possessory Collateral"); (d) determinate any outstanding commitments of Creditor to Borrower or any other Obligor; (e) exercise its right to confess judgment against Borrower as provided hereinafter; and (f) exercise any or all rights, powers and remedies provided for in the Loan Documents or now or hereafter existing at law, in equity, by statute or otherwise.

13.　　**Remedies Cumulative.**　Each right, power and remedy of Creditor hereunder, under the Loan Documents or now or hereafter existing at law, in equity, by statute or otherwise shall be cumulative and concurrent, and the exercise or beginning of the exercise of any one or more of them shall not preclude the simultaneous or later exercise by Creditor of any or all such other rights, powers or remedies. No failure or delay by Creditor to insist upon the strict performance of any one or more provisions of this Note or of the Loan Documents or to exercise any right, power or remedy upon a breach thereof or default hereunder shall constitute a waiver thereof or preclude Creditor from exercising any such right, power or remedy. By accepting full or partial payment after the due date of any amount of principal of or interest on this Note, or other amounts payable on demand, Creditor shall not be deemed to have waived the right either to require prompt payment when due and payable of all other amounts of principal of or interest on this Note or other amounts payable on demand, or to exercise any rights and remedies available to it in order to collect all such other amounts due and payable under this Note.

14.　　**Security.**　As security for the payment of the obligations under this Note or any of the Loan Documents, Borrower and any Obligor who signs this Note hereby grants a security interest in the Possessory Collateral. "Debtor" means any person having an interest in any other collateral which secures this Note, now or hereafter (the "Collateral"). Debtor shall have all risk of loss of the Collateral. Creditor shall have no liability or duty, either before or after the occurrence of an Event of Default, on account of loss of or damage to, to collect or enforce any of its rights against, the Collateral, to collect any income accruing on the Collateral, or to preserve rights

against account debtors or other parties with prior interests in the Collateral. If Creditor actually receives any notices requiring action with respect to Collateral in Creditor's possession, Creditor shall take reasonable steps to forward such notices to any Debtor. Debtor is responsible for responding to notices concerning the Collateral, voting the Collateral and exercising rights and options, calls and conversions of the Collateral. Creditor's sole responsibility is to take such action as is reasonably requested by Debtor in writing; however, Creditor is not responsible to take any action that, in Creditor's sole judgment, would affect the value of the Collateral as security for the Obligations adversely.

Creditor's collection and enforcement of Collateral against account debtors and other persons obligated thereon shall be deemed to be commercially reasonable if Creditor exercises the care and follows the procedures that Creditor generally applies to the collection of obligations owed directly to Creditor. Creditor may apply all Collateral and proceeds of Collateral coming into Creditor's possession to any of the Obligations, whether matured or unmatured, as Creditor shall determine in its sole but reasonable discretion. Creditor may defer the application of non-cash proceeds of Collateral, including, but not limited to, non-cash proceeds collected from account debtors and other persons obligated on Collateral, to the Obligations until cash proceeds are actually received by Creditor.

If and only if Creditor is required by the Kentucky Uniform Commercial Code, KRS Chapter 355 (the "UCC") to give Borrower notice of any disposition of Collateral, Borrower agrees that commercial reasonableness and good faith require Creditor to give Borrower no more than 10 days prior written notice of the time and place of any public disposition of Collateral or of the time after which any private disposition or other intended disposition is to be made of collection and enforcement. Borrower agrees that it is commercially reasonable for Creditor to disclaim all warranties which arise with respect to the disposition of the Collateral.

15. **Collection Expenses.** If this Note is placed in the hands of an attorney for collection following the occurrence of an Event of Default hereunder, Borrower agrees to pay to Creditor upon demand all costs and expenses, including, without limitation, all attorney's fees and court costs incurred by Creditor in connection with the enforcement or collection of this Note (whether or not any action has been commenced by Creditor to enforce or collect this Note) or in successfully defending any counterclaim or other legal proceeding brought by Borrower contesting Creditor's right to collect the outstanding Principal Amount. All of such costs and expenses shall bear interest at the higher of the rate of interest provided herein or any default rate of interest provided herein, from the date of payment by Creditor until repaid in full.

16. **Interest Rate after Judgment.** If judgment is entered against Borrower on this Note, the amount of the judgment entered (which may include principal, interest, fees, and costs) shall bear interest at the higher of: (a) the rate of interest provided herein; (b) any default rate of interest provided herein; or (c) the legal rate of interest then applicable to judgments in the jurisdiction in which judgment was entered.

17. **Maximum Rate of Interest.** Notwithstanding any provision of this Note or the Loan Documents to the contrary, Borrower shall not be obligated to pay interest pursuant to this Note in excess of the maximum rate of interest permitted by the laws of any state determined to govern this Note or the laws of the United States applicable to loans in such state. If any provisions of this Note shall ever be construed to require the payment of any amount of interest in excess of that permitted by applicable law, then the interest to be paid pursuant to this Note shall be held subject to reduction to the amount allowed under applicable law and any sums paid in excess of the interest rate allowed by law shall be applied in reduction of the principal balance outstanding pursuant to this Note. Borrower acknowledges that it has been contemplated at all times by Borrower that the laws of the Commonwealth of Kentucky will govern the maximum rate of interest that it is permissible for Creditor to charge Borrower pursuant to this Note.

18. **Certain Waivers by Borrower.** Borrower waives demand, presentment, protest and notice of demand, of non-payment, of dishonor and of protest of this Note. Creditor, without notice to or further consent of Borrower or any other Obligor and without in any respect compromising, impairing, releasing, lessening or affecting the obligations of Borrower hereunder or under any of the Loan Documents, may: (a) release, surrender, waive, add, substitute, settle, exchange, compromise, modify, extend or grant indulgences with respect to (i) this Note, (ii) any of the Loan Documents, (iii) all or any part of any collateral or security for this Note and/or (iv) any Obligor; (b) complete any blank space in this Note according to the terms upon which the loan evidenced hereby is made; and (c) grant any extension or other postponements of the time of payment hereof.

19. **Choice of Law; Forum Selection; Consent to Jurisdiction.** This Note shall be governed by, construed and interpreted in accordance with the laws of the Commonwealth of Kentucky (excluding the choice of law rules thereof). Borrower hereby (a) agrees that all disputes and matters whatsoever arising under, in connection with, or incident to this Note shall be litigated, if at all, in and before a court located in the Commonwealth of Kentucky to the exclusion of the courts of any other state or country, and (b) irrevocably submits to the non-exclusive jurisdiction of any Kentucky court or federal court sitting in the Commonwealth of Kentucky in any action or proceeding arising out of or relating to this Note, and hereby irrevocably waives any objection to the laying of venue of any such action or proceeding in any such court and any claim that any such action or proceeding has been brought in an inconvenient forum. A final judgment in any such action or proceeding shall be conclusive and may be enforced in any other jurisdiction by suit on the judgment or in any other manner provided by law.

20. **Commercial Purposes.** Borrower acknowledges and warrants that (a) the proceeds of the indebtedness evidenced by this Note will not be used for the purchase of registered equity securities within the purview of Regulation "U" issued by the Board of Governors at the Federal Reserve System; and (b) the loan evidenced by this Note is not a "consumer transaction" as defined in the UCC and none of the Collateral was or will be purchased primarily for personal, family or household purposes.

21. **Subsequent Holders.** In the event that any holder of this Note transfers this Note for value, Borrower agrees that except with respect to subsequent holders with actual knowledge of a claim or defense, no subsequent holder of this Note shall be subject to any claims or defenses which Borrower may have against a prior holder (which claims or defenses are not waived as to prior holders), all of which are waived as to the subsequent holder, and that all such subsequent holders shall have all of the rights of a holder in due course with respect to Borrower even though the subsequent holder may not qualify, under applicable law, absent this paragraph, as a holder in due course.

22. **Invalidity of Any Part.** If any provision or part of any provision of this Note shall for any reason be held invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision (or any remaining part of any provision) of this Note, and this Note shall be construed as if such invalid, illegal or unenforceable provision (or part thereof) had never been contained in this Note, but only to the extent of its invalidity, illegality or unenforceability. In any event, if any such provision pertains to the repayment of the indebtedness evidenced by this Note, then and in such event, at Creditor's option, the outstanding Principal Amount, together with all accrued and unpaid interest thereon, shall become immediately due and payable.

23. **WAIVER OF JURY TRIAL. BORROWER HEREBY (a) COVENANTS AND AGREES NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY A JURY, AND (b) WAIVES TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO WHICH CREDITOR AND BORROWER MAY BE PARTIES ARISING OUT OF, IN CONNECTION WITH OR IN ANY WAY PERTAINING TO THIS NOTE, ANY OF THE LOAN DOCUMENTS AND/OR ANY TRANSACTIONS, OCCURRENCES, COMMUNICATIONS OR UNDERSTANDINGS (OR THE LACK OF ANY OF THE FOREGOING) RELATING IN ANY WAY TO THE DEBTOR-CREDITOR RELATIONSHIP BETWEEN THE PARTIES. IT IS UNDERSTOOD AND AGREED THAT THIS WAIVER CONSTITUTES A WAIVER OF TRIAL BY JURY OF ALL CLAIMS, WHETHER INITIATED BY BORROWER AGAINST CREDITOR OR INITIATED BY CREDITOR AGAINST BORROWER. THIS WAIVER OF JURY TRIAL IS SEPARATELY GIVEN, KNOWINGLY, WILLINGLY AND VOLUNTARILY MADE BY BORROWER AND BORROWER HEREBY AGREES THAT NO REPRESENTATIONS OF FACT OR OPINION HAVE BEEN MADE BY ANY INDIVIDUAL TO INDUCE THIS WAIVER OF TRIAL BY JURY OR TO IN ANY WAY MODIFY OR NULLIFY ITS EFFECT. CREDITOR IS HEREBY AUTHORIZED TO SUBMIT THIS NOTE TO ANY COURT HAVING JURISDICTION OVER THE SUBJECT MATTER AND BORROWER SO AS TO SERVE AS CONCLUSIVE EVIDENCE OF SUCH WAIVER OF RIGHT TO TRIAL BY JURY. BORROWER REPRESENTS AND WARRANTS THAT IT HAS BEEN REPRESENTED IN THE SIGNING OF THIS NOTE AND IN THE MAKING OF THIS WAIVER BY INDEPENDENT LEGAL COUNSEL, SELECTED OF ITS OWN FREE WILL, AND/OR THAT IT HAS HAD THE OPPORTUNITY TO DISCUSS THIS WAIVER WITH COUNSEL.**

24. **Service of Process.** Borrower hereby consents to process being served in any suit, action or proceeding instituted in connection with this Note by the mailing of a copy thereof to Borrower by certified mail, postage prepaid, return receipt requested. Borrower hereby irrevocably agrees that such service shall be deemed to be service of process upon Borrower in any such suit, action or proceeding. Nothing in this Note shall affect the right of Creditor to serve process in any other manner otherwise permitted by law, and nothing in this Note will limit the right of Creditor otherwise to bring proceedings against Borrower in the courts of any other jurisdiction or jurisdictions.

25. **Notice.** Any notice, demand, request or other communication which Creditor or Borrower may be required to give hereunder shall be in writing, shall be effective and deemed received the following business day when sent by overnight courier, upon transmission if sent by facsimile or e- mail, or the third business day after deposited in first class United States mail, postage prepaid, and shall be addressed as follows, or to such other addresses as the parties may designate by like notice:

If to Borrower:

_____, _____
Eagle Industries, LLC, Debtor-in-possession
P.O. Box 9697
Bowling Green, KY 42102-9697


_____, _____
Eagle Transportation, LLC, Debtor-in-possession
P.O. Box 9697
Bowling Green, KY 42102-9697

with a copy to:

David M. Cantor, Esq.
Seiller Waterman, LLC
Meidinger Tower, 22nd Floor
462 South 4th Avenue
Louisville, KY 46204
*Counsel for Borrowers*

If to Creditor:

Todd Kanipe, President/CEO
Citizens First Bank
1065 Ashley Street; Suite 150
P.O. Box 51650
Bowling Green, KY 42102

with a copy to:

Scott A. Bachert, Esq.
Harned Bachert & McGehee PSC
324 E. 10th Avenue
P.O. Box 1270
Bowling Green, KY 42102-1270
*Counsel for Creditor*

and with a copy to:

Thomas C. Fenton, Esq.
John A. Majors, Esq.
Morgan & Pottinger, PSC
601 West Main Street
Louisville, KY 40202
*Counsel for PBI Bank, Inc.*

Notwithstanding anything to the contrary, all notices and demands for payment from Creditor actually received in writing by Borrower shall be considered to be effective upon the receipt thereof by Borrower regardless of the procedure or method utilized to accomplish delivery thereof to Borrower.

27.     **Miscellaneous.**  Time is of the essence under this Note. The paragraph headings of this Note are for convenience only, and shall not limit or otherwise affect any of the terms hereof. This Note and the Loan Documents, if any, constitute the entire agreement between the parties with respect to their subject matter and supersede all prior letters, representations or agreements, oral or written, with respect thereto. Creditor may, without notice to or consent of Borrower, sell, assign, pledge or transfer this Note or sell, assign, transfer or grant participations in all or any part of the obligations evidenced by this Note to others at any time and from time to time, and Creditor may divulge to any potential assignee, transferee or participant all information, reports, financial statements and documents obtained in connection with this Note and any other Loan Documents or otherwise. No modification, release or waiver of this Note shall be deemed to be made by Creditor unless in writing signed by Creditor, and each such waiver, if any, shall apply only with respect to the specific instance involved. No course of dealing or conduct shall be effective to modify, release or waive any provisions of this Note or any of the other Loan Documents. This Note shall inure to the benefit of and be enforceable by Creditor and Creditor's successors and assigns and any other person to whom Creditor may grant an interest in the obligations evidenced by this Note and shall be binding upon and enforceable against Borrower and Borrower's personal representatives, successors, heirs and assigns. Whenever used herein, the singular number shall include the plural, the plural the singular, and the use of the masculine, feminine or neuter gender shall include all genders. This Note may be executed in any number of counterparts, all of which, when taken together shall constitute one Note.

IN WITNESS WHEREOF, Borrower has duly executed this Note as of the day and year first hereinabove set forth.

BORROWER
EAGLE INDUSTRIES, LLC, DEBTOR-IN-POSSESSION

By:_____

BORROWER
EAGLE TRANSPORTATION, LLC, DEBTOR-IN-POSSESSION

By:_____

# SECURITY AGREEMENT

**THIS SECURITY AGREEMENT**, is made and entered into this ___ of December, 2010, by and between **Eagle Industries, LLC**, a Kentucky limited liability company, debtor-in-possession (*In re: Eagle Industries, LLC, United States Bankruptcy Court, Western District of Kentucky, Case No. 10-_____*), and **Eagle Transportation, LLC,** a Kentucky limited liability company, debtor-in-possession (*In re: Eagle Transportation, LLC, United States Bankruptcy Court, Western District of Kentucky, Case No. 10-_____, a _____* corporation ("Debtor"), in favor of Citizens First Bank, a Kentucky banking corporation ("Creditor").

A. Debtor has requested Creditor to extend Debtor a senior secured super-priority post-petition debtor-in-possession loan in the principal amount of Three Hundred Seventy-One Thousand and 00/100Dollars ($371,000.00) (the "Loan") as evidenced by a Promissory Note dated _____ , 2010 in the principal amount of the Loan executed by Debtor and delivered to Creditor (the "Note").

B The Loan has been approved by the United States Bankruptcy Court, pursuant 11 U.S.C. §§105, 361, 364 and 507 of the Bankruptcy Code by Order entered _____ (Docket #____) in *In re: Eagle Industries, LLC, United States Bankruptcy Court, Western District of Kentucky, Case No. 10-_____, and in In re: Eagle Transportation, LLC, United States Bankruptcy Court, Western District of Kentucky, Case No. 10-_____,*

C. The obligation of the Secured Party to make such loan in favor of the Debtor is expressly subject to the condition, among others, that the Debtor executes and delivers this Security Agreement and grant to the Secured Party a first priority security interest in all of the property described below.

**NOW, THEREFORE**, in consideration of the foregoing premises, and for other good and valuable consideration, the mutuality, receipt and sufficiency of which are hereby acknowledged, the Debtor and the Secured Party hereby agree as follows:

1. **Security Interest**. To secure the payment of the Note and all of the other indebtedness and obligations described in Section 2 hereof, the Debtor hereby pledges, sells, assigns and transfers to the Secured Party, and hereby grants to the Secured Party a first priority security interest in, all of the collateral more particularly described in Exhibit A attached hereto

Each item or type of collateral described in this Section 1 shall have the meaning ascribed thereto in the Uniform Commercial Code as enacted in the Commonwealth of Kentucky, to the extent the same is so defined in the Uniform Commercial Code as enacted in the Commonwealth of Kentucky. All of the property described in clauses (a) through (e) above is hereafter collectively, and each item of which is hereinafter individually, referred to as the "Collateral". There is included within the term "Collateral", as used herein, all other property and all interests therein of any kind hereafter acquired by the Debtor meeting or falling within the general description of the Collateral set forth herein.

2. **Secured Obligations**. The Debtor has executed and delivered this Security Agreement, and has granted to the Secured Party a first priority security interest in all of the Collateral, to secure the payment of the entire unpaid principal of and all interest now accrued or hereafter to accrue on the Note, (b) the performance of all obligations of the Debtor under the Loan Agreement, this Security Agreement and all of the other Loan Instruments (as such terms are defined in the Loan Agreement), and (c) the payment of all other indebtedness of the Debtor to the Secured Party, whether now existing or hereafter created, arising or acquired, absolute or contingent, joint or joint and several, and due or to become due (the Note and all of the other indebtedness and obligations described in this Section 2 are hereinafter collectively referred to as the "Secured Obligations"). The Note and the other Secured Obligations are secured by the Collateral with such priority as the Secured Party may elect in its sole and absolute discretion at any time and from time to time.

3. **Affirmative Covenants**. The Debtor hereby covenants and agrees with the Secured Party that the Debtor will observe and perform all of the following provisions until all of the Secured Obligations have been paid in full to the Secured Party, this Security Agreement has been terminated by the Secured Party and all Uniform Commercial Code Financing Statements filed in connection herewith have been terminated of record:

3.1 **Defend the Collateral**. The Debtor shall, at its own expense, defend the Collateral against the claims and demands of all persons and entities, and shall take or cause to be taken all actions necessary or appropriate to preserve, protect and maintain good right and title to all of the Collateral at all times.

3.2 **Insurance.**

(a) **Public Liability Insurance.** The Debtor shall, at its own expense, obtain and maintain public liability insurance with an insurance company licensed to do business in the Commonwealth of Kentucky and in such amounts, subject to such deductibles, insuring against such risks and otherwise upon such terms and conditions as is normally obtained and maintained by entities conducting businesses similar to the business currently being conducted by the Debtor.

(b) **Property Insurance**. The Debtor shall, at its own expense, obtain and maintain property insurance on all tangible Collateral with an insurance company licensed to do business in the Commonwealth of Kentucky, and otherwise acceptable to the Secured Party and insuring against loss or damage by fire and casualty and against such other risks as are included in coverage of the type known as "extended coverage," in an amount, excepting only a deductible not exceeding $200,000.00 with respect to each event of loss or damage, not less than the full replacement value of such tangible Collateral (as determined from time to time, but not less frequently than every consecutive twelve calendar month period, by the insurer or, at the option of the Secured Party, by the Debtor), with "agreed amount endorsement" waiving any co-insurance clause or provision.

(c) **Other Insurance.** In addition to the insurance described in subparts (a) and (b) above, the Debtor agrees to obtain from time to time such other

insurance as the Secured Party may reasonably request in order to protect the value of the Collateral as security for the Secured Obligations.

(d) **Assignment of Insurance**. The Debtor hereby collaterally assigns to the Secured Party all rights of the Debtor to receive the proceeds of all of the insurance described above, not to exceed the unpaid principal balance of and all accrued interest on all of the Secured Obligations. All such proceeds of insurance shall be paid to the Secured Party, which will, at the request of the Debtor and provided that no Event of Default (as hereinafter defined) has occurred, make the same available to the Debtor under procedures acceptable to the Secured Party to repair or replace the damaged Collateral or to apply the same to the Secured Obligations in such order as the Secured Party may select in its sole and absolute discretion. If an Event of Default has occurred, all such proceeds of such insurance shall be paid directly to the Secured Party, without further authorization, and the Secured Party shall have the right to (i) compromise, settle and/or receipt for any and all claims under such insurance policies, and (ii) obtain such proceeds and endorse and negotiate any check and/or draft for such proceeds and, at the Secured Party's sole option, apply the same to the replacement of the damaged Collateral, pursuant to procedures completely satisfactory to the Secured Party, and/or apply the same to the Secured Obligations in such order as the Secured Party may select in its sole and absolute discretion. The Debtor shall forthwith deliver the original or a certificate of all such insurance policies to the Secured Party, with the Secured Party named as an additional insured and loss-payee thereunder pursuant to a standard lender's endorsement and with full waiver of subrogation rights against any insureds or loss-payees, and which shall provide that the same may not be cancelled, terminated or modified, even for non-payment of premiums, except after thirty (30) days prior written notice from the insurance company to, and actually received by, the Secured Party. All such insurance policies shall provide that the proceeds thereof shall be payable thereunder notwithstanding any act, negligence or default of the Debtor, the Secured Party or anyone else. The Debtor shall deliver to the Secured Party proof of renewals and payment of premiums for all such policies not less than ten (10) days prior to the expiration date of the particular policy or the due date of the premiums therefor, as the case may be.

(e) **Cancellation of Insurance**. Upon cancellation of any of the insurance policies covering the Collateral or any part thereof by the Debtor, the Secured Party, as the Debtor's irrevocable attorney-in-fact, may obtain and receipt for (and endorse any check or draft for) a refund of the unearned premiums from any of such insurance policies and apply the same to the Secured Obligations in such order as the Secured Party may select in its sole and absolute discretion, and the Debtor hereby instructs all such insurance companies to pay such refunds of insurance premiums directly to the Secured Party without further authorization from the Debtor.

(f) **Failure to Obtain Insurance.** If the Debtor fails to obtain any of the insurance described above, the Secured Party shall have the right, but not the obligation, to obtain the same at the Debtor's sole expense, and all sums

advanced by the Secured Party in obtaining any such insurance shall bear interest at the rate set forth in the Revolving Note as applicable to overdue principal and/or accrued interest thereunder, and all such advances and all interest thereon shall constitute part of the Secured Obligations, shall be secured by all of the Collateral with the same priority as the Revolving Note to the fullest extent permitted by applicable law, and shall be due and payable in full to the Secured Party within five (5) days after demand has been made therefor by the Secured Party.

       3.3    **Maintenance of Collateral**.  The Debtor shall, at its own expense, take or cause to be taken all actions necessary or appropriate to preserve all of the tangible Collateral in good condition and repair, ordinary wear and tear excepted, and the Debtor shall from time to time make or cause to be made all necessary and proper repairs and replacements to the tangible Collateral so that at all times the same shall be fully preserved and maintained.

       3.4    **Use and Inspection of Collateral**.  The Debtor shall use the Collateral in complete compliance with all applicable laws, rules and regulations governing the use thereof. The Debtor shall permit the Secured Party and its officers, employees and agents to inspect the Collateral and all books and records of the Debtor pertaining thereto at all reasonable times and from time to time, and the Debtor shall forthwith deliver to the Secured Party such information concerning the Collateral as the Secured Party may from time to time request in its sole and absolute discretion.

       3.5    **Change of Name and/or Location of the Collateral**.  The Debtor shall advise the Secured Party in writing, at least thirty (30) days in advance, of any proposed change in the Debtor's principal place of business or registered office or the Debtor's other places of business or the proposed opening of any new place of business or any new location where any of the Collateral or any records concerning the same may be located, or any proposed change in the Debtor's name or the proposed adoption by the Debtor of a trade name, assumed name or fictitious name.

       3.6    **Collection of Accounts Receivable and Intangibles.**  Subject to the provisions of Section 10 hereof, the Debtor shall, at its own expense, take or cause to be taken all reasonable steps to collect when due all of the Accounts Receivable and Intangibles of the Debtor.

       3.7    **Further Assurances.**  The Debtor shall, at its own expense, execute and deliver such Uniform Commercial Code Financing Statement, Uniform Commercial Code Amendments, Uniform Commercial Code Continuation Statements and such other documents and instruments and shall take such further actions as may be necessary or as may be reasonably requested by the Secured Party to carry out more effectively the purposes of this Security Agreement and to perfect and to continue the first priority perfected status of the security interest in the Collateral granted to the Secured Party pursuant hereto.

       3.8    **Payment of Taxes; Maintenance of Priority of Security Interest.**  The Debtor will pay and discharge promptly as they become due and payable all taxes, assessments and other governmental charges or levies imposed upon the Collateral or any part thereof, as well as all lawful claims of any kind (including claims for labor, materials and supplies) which, if

unpaid, might by law become a lien or a charge upon the Collateral or any part thereof; provided that the Debtor shall not be required to pay any such tax, assessment, charge, levy or claim if the amount, applicability or validity thereof shall currently be contested in good faith by appropriate proceedings or other appropriate actions promptly initiated and diligently conducted, and if the Debtor shall have set aside on its books such reserves, if any, with respect thereto as are required by generally accepted accounting principles deemed appropriate by the Debtor and its independent public accountants. Further, the Debtor shall, at its expense, pay and discharge all other encumbrances upon the Collateral, the lien of which could be held prior to the security interest therein granted to the Secured Party.

4.     **Negative Covenants**.  The Debtor hereby covenants and agrees with the Secured Party that the Debtor will observe and perform all of the following provisions until all of the Secured Obligations have been paid in full to the Secured Party, this Security Agreement has been terminated by the Secured Party and all Uniform Commercial Code Financing Statements filed in connection herewith have been terminated of record:

4.1     **Levies**.  The Debtor shall not permit any of the Collateral to be levied upon under any legal process.

4.2     **Sale of the Collateral**.  The Debtor shall not, without the prior written consent of the Secured Party in every specified instance, sell, transfer, dispose of or further encumber any of the Collateral, except for the collection of Accounts Receivable in the ordinary course of business, the sale of Inventory in the ordinary course of business, and the sale of obsolete Equipment no longer usable in the Debtor's business.

4.3     **Location of the Collateral**.  The Debtor shall not, without at least thirty (30) days prior written notice to the Secured Party, change the location of any of the Collateral or the books and records of the Debtor pertaining thereto.

5.     **Representations and Warranties**.  The Debtor represents and warrants to the Secured Party as follows, which representations and warranties shall be deemed to be continuing representations and warranties and shall survive the execution and delivery of this Security Agreement:

5.1     **Location of the Collateral; Address.**  The Collateral is used or will be used for business purposes, and the locations where the Collateral is currently located and the locations of all of the Debtor's places of business and where any accounting or other books and records concerning the Collateral are and shall be located, while any of the Secured Obligations remain unpaid and/or the Loan Agreement remains in effect, are set forth on Exhibit A attached hereto and made a part hereof.

5.2     **Liens.**  The Debtor is the owner of all of the Collateral, free and clear of all liens and security interests, except for the security interest created hereby and the lien of ad valorem property taxes not yet due and payable.

6.     **Fixtures, Etc.**  It is the intention of the parties hereto that none of the Collateral shall become fixtures, other than the use of Inventory from time to time to repair the premises of the Debtor in the ordinary course of business. The Debtor, upon notice of any likelihood that

such an event might occur, other than as provided above, will use its best efforts to take all such reasonable action as may be necessary to prevent any of the Collateral from becoming fixtures. Without limiting the generality of the foregoing, the Debtor will, if requested by the Secured Party: (a) promptly execute and deliver to the Secured Party such mortgages, deeds of trust, financing statements, certificates and other documents or instruments as may be necessary to enable the Secured Party to perfect a security interest in any of the Collateral which is or may become fixtures, and (b) use its reasonable best efforts to obtain waivers of lien, in form satisfactory to the Secured Party, from each lessor of real property on which any of the Collateral is or is to be located.

7. **Events of Default.** Each of the following events shall constitute an Event of Default hereunder:

(i)     the occurrence of an event of default under the Agreed Order Authorizing Debtor To Obtain Senior Secured Super-Priority Post-Petition Financing;

(ii)    the failure to make any of the interest or principal payments set forth in the Agreed Order Authorizing Debtor To Obtain Senior Secured Super-Priority Post-Petition Financing;

(iii)   the failure to pay when due the adequate protection payments to Citizens First Bank pursuant to the Agreed Interim Order Authorizing Debtor to Utilize Cash Collateral of Prepetition Lender and Granting Adequate Protection to Prepetition Lender, and any additional interim and/or final orders providing for adequate protection payments to Citizens First.;

(iv)    for failure to pay when due the following adequate protection payments to PBI Bank, Inc., in accordance with the payment schedule set forth in the Agreed Order of Adequate Protection entered into by the Debtor and PBI Bank, and any additional interim or final orders providing for adequate protection payments to PBI Bank;

(v)     the effective date of any plan of reorganization or liquidation;

(vi)    entry of an order reversing in any respect the any order approving use of cash collateral, or payment of adequate protection to Citizens First or PBI Bank, Inc., Inc. (unless waived in writing by Citizens First and/or PBI Bank, Inc.);

(vii)   the conversion of the Chapter 11 Case to a case under Chapter 7 of the Bankruptcy Code;

(viii)  the appointment of a trustee or an examiner with special powers;

(ix)    The dismissal of the Chapter 11 Case; and

(x)     The occurrence of any Event of Default under and as defined in the Loan Agreement.

8.      **Rights of the Secured Party**.  Upon the occurrence of any Event of Default (as defined in Section 7 hereof), the Secured Party may declare all of the Secured Obligations to be immediately due and payable and may exercise all of the rights and remedies of a secured party under the Uniform Commercial Code as enacted in the Commonwealth of Kentucky or under any other applicable law, including, without limitation, the right to take possession of the Collateral and, in addition thereto, the right to enter upon any premises on which the Collateral or any part thereof may be situated and remove the same therefrom. The Secured Party may require the Debtor to make the Collateral (to the extent the same is moveable) available to the Secured Party at a place to be designated by the Secured Party which is reasonably convenient to the Debtor and the Secured Party. Unless the Collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, the Secured Party will give the Debtor at least ten (10) days' prior written notice at the address of the Debtor set forth below (or at such other address or addresses as the Debtor shall specify in writing to the Secured Party) of the time and place of any public sale thereof or of the time after which any private sale or any other intended disposition thereof is to be made. Any such notice shall be deemed to meet any requirement hereunder or under any applicable law (including the Uniform Commercial Code as enacted in the Commonwealth of Kentucky) that reasonable notification be given of the time and place of such sale or other disposition. After deducting all costs and expenses of collection, storage, custody, sale or other disposition and delivery (including reasonable legal costs and attorneys' fees) and all other charges against the Collateral, the residue of the proceeds of any such sale or disposition shall be applied to the payment of the Secured Obligations in such order of priority as the Secured Party shall select in its sole and absolute discretion, and any surplus shall be returned to the Debtor or to any person or party lawfully entitled thereto (including, if applicable, any subordinated creditors of the Debtor). In the event the proceeds of any sale, lease or other disposition of the Collateral hereunder are insufficient to pay all of the Secured Obligations in full, the Debtor will be liable for the deficiency thereof, together with interest thereon, at the rate provided in the Note as applicable to overdue principal and/or accrued interest thereunder, and the costs and expenses of collection of such deficiency, including, to the extent permitted by law, reasonable legal costs and attorneys' fees, expenses and disbursements.

9.      **Rights of Secured Party to Use and Operate Collateral, etc.**  Upon any taking of possession of the Collateral, as provided by Section 8 hereof, the Secured Party may, from time to time, at the expense of the Debtor, make all such repairs, replacements, alterations, additions and improvements to any of the Collateral as the Secured Party may deem proper. In any such case, the Secured Party shall have the right to manage and control the Collateral and to carry on the business and to exercise all rights and powers of the Debtor in respect thereto as the Secured Party shall deem best, including, without limitation, the right to enter into any and all such agreements with respect to the leasing and/or operation of the Collateral or any part thereof as the Secured Party may see fit; and the Secured Party shall be entitled to collect and receive all rents, issues, profits, fees, revenues and other income of the same and every part thereof. Such rents, issues, profits, fees, revenues and other income shall be applied to pay the expenses of holding and operating the Collateral and of conducting the business thereof, and to pay the costs and expenses of all maintenance, repairs, replacements, alterations, additions and improvements to the Collateral, and to make all payments which the Secured Party may be required or may elect to make, if any, for taxes, assessments, insurance and other charges upon or in respect of the Collateral or any part thereof, and all other payments which the Secured Party may be

required or authorized to make under any provision of this Security Agreement. The remainder of such issues, profits, fees, revenues and other income shall be applied to the payment of the Secured Obligations in such order of priority as the Secured Party shall select in its sole and absolute discretion and, unless otherwise provided by law or by a court of competent jurisdiction, any surplus shall be returned to the Debtor or to any person or party lawfully entitled thereto (including, if applicable, any subordinated creditors of the Debtor). Without limiting the generality of the foregoing, the Secured Party shall have the right to apply for and have a receiver appointed by a court of competent jurisdiction in any action taken by the Secured Party to enforce its rights and remedies hereunder in order to manage, protect and preserve the Collateral and to continue the operation of the business of the Debtor and to collect all rents, issues, profits, revenues and income thereof and apply the same to the payment of all expenses and other charges of such receivership, including the compensation of the receiver, and to the payment of the Secured Obligations as aforesaid until a sale or other disposition of such Collateral shall be finally made and consummated.

10. **Collection of Accounts Receivable, etc.** Upon the occurrence of any Event of Default, the Secured Party may notify or may require the Debtor to notify account debtors obligated on any or all of the Debtor's then existing or thereafter arising Accounts Receivable and Intangibles to make payment directly to the Secured Party, and may take possession of all proceeds of any Accounts Receivable and Intangibles in the Debtor's possession, and may take any other steps which the Secured Party deems necessary or advisable to collect any or all such Accounts Receivable, Intangibles or other Collateral or the proceeds thereof.

11. **Waivers, etc.** The Debtor on its own behalf, and on behalf of its successors and assigns, hereby expressly waives presentment, demand, notice, protest and, except as is otherwise provided herein, all other demands and notices in connection with this Security Agreement or the enforcement of the rights of the Secured Party hereunder or in connection with any Secured Obligations or any Collateral; consents to and waives notice of the granting of renewals, extensions of time for payment or other indulgences to the Debtor or to any account debtor in respect of any Account Receivable or Intangible, or the substitution, release or surrender of any Collateral, the addition or release of persons primarily or secondarily liable on any Secured Obligation or on any Account Receivable, Intangible or other Collateral, the acceptance of partial payments on any Secured Obligation or on any Account Receivable, Intangible or other Collateral and/or the settlement or compromise thereof. No delay or omission on the part of the Secured Party in exercising any right hereunder shall operate as a waiver of such right or of any other right hereunder. Any waiver of any such right on any one occasion shall not be construed as a bar to or waiver of any such right on any such future occasion. The Debtor further waives any right it may have under the constitution of the Commonwealth of Kentucky (or under the constitution of any other state in which any of the Collateral may be located), or under the Constitution of the United States of America, to notice (other than any requirement of notice provided herein) or to a judicial hearing prior to the exercise of any right or remedy provided by this Security Agreement to the Secured Party and waives its rights, if any, to set aside or invalidate any sale duly consummated in accordance with the foregoing provisions hereof on the grounds (if such be the case) that the sale was consummated without a prior judicial hearing. The Debtor's waivers under this Section 11 have been made voluntarily, intelligently and knowingly and after the Debtor has been apprised and counseled by its attorneys as to the nature thereof and its possible alternative rights.

12.	**Termination; Assignment, etc.**   This Security Agreement and the security interest in the Collateral created hereby shall terminate when all of the Secured Obligations have been paid in full to the Secured Party and finally discharged in full. No waiver by the Secured Party of any default hereunder or under the Loan Agreement or any other Loan Instrument shall be effective unless in writing nor operate as a waiver of any other default or of the same default on a future occasion. In the event of a sale or assignment by the Secured Party of all or any of the Secured Obligations, the Secured Party may assign or transfer its rights and interests under this Security Agreement in whole or in part to the purchaser or purchasers of such Secured Obligations, whereupon such purchaser or purchasers shall become vested with all of the powers and rights of the Secured Party hereunder, and the Secured Party shall thereafter be forever released and fully discharged from any liability or responsibility hereunder with respect to the rights and interests so assigned.

13.	**Governmental Approvals.**   Upon the exercise or proposed exercise by the Secured Party of any power, right, privilege or remedy pursuant to this Security Agreement which requires any consent, approval, recording, qualification or authorization of any governmental authority or instrumentality, the Debtor will execute and deliver, or will cause the execution and delivery of, all applications, certificates, instruments and other documents and papers that may be required to obtain such governmental consent, approval, recording, qualification or authorization.

14.	**Reinstatement.**   This Security Agreement shall continue in effect, or be reinstated, as the case may be, at any time any amount received by the Secured Party in respect of the Secured Obligations is rescinded or must otherwise be restored or returned by the Secured Party upon the insolvency, bankruptcy, dissolution, liquidation or reorganization of the Debtor or upon the appointment of an intervenor or conservator of, or trustee or similar official for, the Debtor or any substantial part of its properties, or otherwise, all as though such payments had not been made.

15.	**Miscellaneous.**   This Security Agreement shall inure to the benefit of and be binding upon the parties hereto and their respective successors and assigns, and the term "Secured Party" shall be deemed to include any other holder or holders of any of the Secured Obligations. In case a court of competent jurisdiction shall hold any provision in this Security Agreement to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall not in any way be affected or impaired thereby. This Security Agreement may be executed in any number of counterparts and by the different parties hereto on separate counterparts, each of which when so executed and delivered shall be an original, but all of which together shall constitute one instrument.

16.	**Governing Law Jurisdiction**.   This Security Agreement and the rights and obligations of the parties hereunder shall be governed by and construed in accordance with the laws of the Commonwealth of Kentucky.

17.	**Cumulative Rights and Remedies.**   All rights and remedies of the Secured Party as set forth in this Security Agreement shall, to the fullest extent permitted by applicable law, be cumulative, and the exercise by the Secured Party of any right or remedy shall not be deemed to

be an election of that right or remedy to the exclusion of any other right or remedy of the Secured Party.

18.    **Payment of Costs, Attorney Fees and Expenses.**  The Debtor will pay any and all costs, attorney fees and other expenses of whatever kind incurred by the Secured Party in connection with (a) enforcing this Security Agreement, (b) obtaining possession of the Collateral, (c) the protection and preservation of the Collateral, (d) the collection of the Note and the other Secured Obligations or any part thereof, and (e) any litigation involving the Collateral, any benefit accruing to the Secured Party by virtue of the provisions hereof or the rights of the Secured Party hereunder.

19.    **Irrevocable Attorney-in-Fact.**  The Debtor hereby irrevocably appoints the Secured Party as the Debtor's attorney-in-fact (a) to do all acts and things which the Secured Party may deem necessary or appropriate in its sole and absolute discretion to perfect and to continue the first priority perfected status of the security interest created by this Security Agreement and to protect the Collateral, including, without limitation, the execution in the Debtor's name, as its irrevocable attorney-in-fact, of Uniform Commercial Code Financing Statements, Uniform Commercial Code Amendments and Uniform Commercial Code Continuation Statements covering the Collateral and the filing and recordation of the same wherever the Secured Party deems appropriate in its sole and absolute discretion, and (b) following the occurrence of an Event of Default hereunder, to endorse, in the name of the Debtor, all checks, drafts and other instruments in payment of the Debtor's Accounts Receivable and Intangibles, to give notices and receipts in the Debtor's name, to collect and to bring suit to collect and/or to compromise and/or to settle any such Accounts Receivable and Intangibles, and to perform such other acts in connection with such Accounts Receivable and Intangibles and/or the other Collateral as the Secured Party determines in its sole and absolute discretion to be necessary or appropriate to effectuate the purposes of this Security Agreement.

20.    **Payments by Secured Party.**  The Debtor shall reimburse the Secured Party for all payments made by the Secured Party in performing any actions on behalf of the Debtor, whether as the irrevocable attorney-in-fact for the Debtor pursuant to Section 19 above or otherwise, including, without limitation, all amounts paid by the Secured Party (a) to discharge taxes, levies and liens against the Collateral or to obtain and maintain insurance on the Collateral or to repair, maintain, operate and preserve the Collateral, and/or (b) in connection with the collection and enforcement of the Debtor's Accounts Receivable and Intangibles. All such advances made by the Secured Party shall bear interest at the rate set forth in the Revolving Note as applicable to overdue principal and/or accrued interest thereunder, and all such advances and all interest thereon shall constitute part of the Secured Obligations, shall be secured by all of the Collateral with the same priority as the Revolving Note to the fullest extent permitted by applicable law, and shall be due and payable in full to the Secured Party within five (5) days after demand has been made therefor by the Secured Party.

21.    **Future Advances.**  This Security Agreement secures all future advances or loans that may be made at any time by the Secured Party to the Debtor.

22.    **Notices**.  All notices required or permitted to be given hereunder shall be given in writing and shall be personally delivered or sent by express courier service or by registered or

certified United States mail, return receipt requested, postage prepaid, addressed as follows (or to such other address to which either party hereto shall have given the other written notice):

If to Debtor:

_____, _____
Eagle Industries, LLC, Debtor-in-possession
P.O. Box 9697
Bowling Green, KY 42102-9697


_____, _____
Eagle Transportation, LLC, Debtor-in-possession
P.O. Box 9697
Bowling Green, KY 42102-9697

with a copy to:

David M. Cantor, Esq.
Seiller Waterman, LLC
Meidinger Tower, 22nd Floor
462 South 4th Avenue
Louisville, KY 46204
*Counsel for Borrowers*

If to Creditor:

Todd Kanipe, President/CEO
Citizens First Bank
1065 Ashley Street; Suite 150
P.O. Box 51650
Bowling Green, KY 42102

with a copy to:

Scott A. Bachert, Esq.
Harned Bachert & McGehee PSC
324 E. 10th Avenue
P.O. Box 1270
Bowling Green, KY 42102-1270
*Counsel for Creditor*

and with a copy to:

Thomas C. Fenton, Esq.
John A. Majors, Esq.
Morgan & Pottinger, PSC

601 West Main Street
Louisville, KY 40202
*Counsel for PBI Bank, Inc.*

All notices hereunder shall be deemed given upon the earliest of (a) actual delivery in person, (b) one (1) Business Day (as such term is defined in the Loan Agreement) after delivery to an express courier service, or (c) five (5) Business Days after having been deposited in the United States mails, in accordance with the foregoing.

23. **No Implied Waiver.** All options and rights of the Secured Party are continuing, and the failure of the Secured Party to exercise any such option or right of election in any instance shall not be construed as waiving the right to exercise such option or right at any subsequent time or be construed as waiving the right to exercise any other option or right hereunder or at law or in equity. No exercise by the Secured Party of any of the options, rights or powers provided herein and no delay or omission in the exercise of such options, rights and powers shall be construed to exhaust the same or be construed as a waiver thereof, and each such option, right and power may be exercised at any time or from time to time.

24. **Severability of Provisions.** If any term or provision of this Security Agreement is held to be invalid or unenforceable in any jurisdiction, the other terms and provisions hereof shall remain in full force and effect in such jurisdiction and the invalid or unenforceable provision shall remain in full force and effect in all other jurisdictions.

25. **Successors and Assigns**. This Security Agreement shall bind the Debtor and its successors and assigns and shall inure to the benefit of the Secured Party and its successors and assigns.

26. **Captions**. The various section headings used in this Security Agreement are inserted for convenience of reference only and shall be ignored in construing the provisions hereof.

27. **Time of the Essence.** Time shall be of the essence in the performance of all of the Debtor's obligations and covenants under this Security Agreement.

28. **No Third Party Rights**. Nothing contained in this Security Agreement shall operate for the benefit of, or shall be construed to create or confer any rights in favor of, any individuals, corporations, partnerships or other entities not a party to this Security Agreement (excluding the respective successors and assigns of the Debtor and the Secured Party).

IN TESTIMONY WHEREOF, witness the signatures of the parties hereto as of the day, month and year first above written.

<div style="margin-left:40%">

DEBTOR
EAGLE INDUSTRIES, LLC, DEBTOR-IN-POSSESSION

By:_____

DEBTOR
EAGLE TRANSPORTATION, LLC, DEBTOR-IN-
    POSSESSION

By:_____

</div>

**PREPARED BY:**

HARNED, BACHERT & MCGEHEE PSC
324 East 10th Avenue
P.O. Box 1270
Bowling Green, Kentucky  42102-1270
Telephone:  (270) 782-3938


_____
SCOTT A. BACHERT

<div align="center">

**EXHIBIT A**
**TO**
**COMMERCIAL SECURITY AGREEMENT**
**DATED**
**October , 2010**

</div>

**COLLATERAL DESCRIPTION**.  The word "Collateral" as used in this Agreement means the following described property, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located, in which Grantor is giving to Lender a security interest for the payment of the Indebtedness and performance of all other obligations under the Note and this Agreement:

**(1)      All prepetition equipment, accounts receivables, cash, inventory, work in process and general intangibles of the Debtor, whether now owned or hereafter acquired;**
**(2)      All  and postpetition equipment, accounts receivables, cash, inventory, work in process and general intangibles of the Debtor, whether now owned or hereafter acquired;**
**(3)      The following l trucks and trailers;**
**(4)      All instruments, including but not limited to the proceeds of the Subordinated DIP Loan of $70,000.00 to be made by the Owners of the Debtor;**
**(5)      Allrights, claims, and other causes of action of such Debtor's estates (including any actions asserted by any Debtor or any subsequently appointed trustees or representatives of that Debtor's estate under any section of the Bankruptcy Code), and in each case, all proceeds resulting therefrom, including proceeds from avoidance actions under sections 544, 545, 547, 548 , 550, 551, or 553 of the Bankruptcy Code.**

In addition, the word "collateral" also includes all of the following, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located:

(A) All accessions, attachments, accessories, tools, parts, supplies, replacements of and additions to any of the collateral described herein, whether added now or later.

(B) All products and produce of any of the property described in this Collateral section.

(C) All accounts, general intangibles, instruments, rents, monies, payments, and all other rights, arising out of a sale, lease, consignment or other disposition of any of the property described in this Collateral section.

(D) All proceeds (including insurance proceeds) from the sale destruction, loss, or other disposition of any of the property described in this Collateral section, and sums due from a third party who has damaged or destroyed the Collateral or from the party's Insurer, whether due to judgment, settlement or other process.

(E)  All records and data relating to any of the property described in this Collateral section, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of Grantor's right, title, and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media.